UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
RHONDA L. MACO,

                                Plaintiff,

                    -against-

BALDWIN UNION FREE SCHOOL DISTRICT,
and LORI A. PRESTI, and CARRIE BILLITZKI,
in their official and individual capacities,

                                Defendants.

------------------------------------------------------------X

MEMORANDUM AND ORDER

CV 15-3958

(Wexler, J.)

APPEARANCES:

    FAMIGHETTI & WEINICK, PLLC
    BY:   Matthew Weinick, Esq.
    Attorneys for Plaintiff
    155 Pinelawn Road, Suite 220S
    Melville, NY 11747

    SILVERMAN & ASSOCIATES
    BY:   Lewis R. Silverman, Esq.
            Gerald S. Smith, Esq.
    Attorneys for Defendants
    445 Hamilton Avenue, Suite 1102
    White Plains, NY 10601

WEXLER, District Judge:

This civil rights action arises out of a report by Defendants to Child Protection Services ("CPS") regarding Plaintiff's care of her minor daughter. Before the Court is Defendants' motion to dismiss, pursuant to Federal Rule of Civil Procedure 12(b)(6). Plaintiff opposes the motion. For the following reasons, Defendants' motion is granted in part and denied in part.

## BACKGROUND

In June 2013, Plaintiff's minor child, N.M., was a first-grade student at Steele Elementary School ("Steele"), which is operated by Defendant Baldwin Union Free School District (the "District"). (Compl. ¶¶ 8-9, 15.) Defendant Lori Presti ("Presti") is the Principal of Steele and Defendant Carrie Billitzki ("Billitzki") is Steele's social worker. (Id. ¶¶ 9-10.)

On June 5, 2013, N.M. attended "field day" at Steele, an event in which students participate in athletic activities, such as running and "water games." (Id. ¶ 16.) Plaintiff also attended field day to assist with water and snacks for the students. (Id.) On that day, Presti advised Plaintiff that N.M. was not allowed to participate in field day as a form of punishment. (Id. ¶ 17.) Out of over 300 children, N.M. was the only one barred from participating in field day. (Id.)

During field day, Plaintiff witnessed Billitzki lead N.M. out of the school and direct her to kneel down on the hot pavement in front of the other children. (Id. ¶ 18.) The next day, Plaintiff emailed Presti to complain about Billitzki's treatment of N.M. on field day. (Id. ¶ 19.) Approximately one week later, Plaintiff met with Presti and Billitzki to discuss her complaint. (Id. ¶ 20.) Billitzki did not deny engaging in the actions complained of by Presti. (Id. ¶ 21.) During the meeting, Presti advised Plaintiff that the District's actions in singling out N.M. as the only child not to participate in field day were inappropriate. (Id. ¶ 22.)

On March 31, 2014, N.M.'s second-grade teacher, Kristin Maldonado ("Maldonado"), emailed Plaintiff, stating that N.M. was being "defiant" and having a "terrible day." (Id. ¶ 23.) Plaintiff responded via email that same day, assuring Maldonado that she had spoken with N.M. during lunch and would speak to her again after school. (Id. ¶ 24.)

Later that same week, Maldonado again emailed Plaintiff, advising that she was "very concerned" about N.M.'s behavior. (Id. ¶ 25.) Maldonado stated that N.M. "appears angry and sad . . . She is acting out and I feel we should meet with the school psychologist next week." (Id.) Plaintiff responded that N.M. had a "great" morning so she was unsure as to what could be bothering her. (Id. ¶ 26.) In addition, Plaintiff requested that Maldonado meet with her when she came to pick N.M. up from school to discuss the specific behavior concerning Maldonado. (Id. ¶ 27.)

Plaintiff received no further response from Maldonado until April 8, 2014, when she emailed Plaintiff as follows: "[N.M.] is having a terrible morning. She is defiant. She won't look at me when I am speaking to her. Then she refused to do her work. She appears depressed and bothered . . . She accused me of hurting her with my nails . . . ." (Id. ¶ 28.) Ten minutes later, Maldonado again emailed Plaintiff, this time stating "I just had a talk with [N.M.] She is feeling sad. She feels that her parents, her teacher and the kids are against her. I really think we should all sit down to help her through this. Please let me know when you are available to meet." (Id. ¶ 29.)

Plaintiff had lunch with N.M. that day and then N.M. returned to school. (Id. ¶ 30.) After lunch, Plaintiff responded to Maldonado's email, stating as follows: "I spoke with [N.M.] during lunch today about her behavior. I also put in a call to her pediatrician. In the meantime, if there are any more problems today, please call . . . If you have any time tomorrow, let me know what time and we can discuss." (Id. ¶ 31.)

That same day, Billitzki telephoned the New York State Center of Child Abuse and Maltreatment ("NYSCCAM") and reported that "7-year old child [N.M] has several behavior

issues and continuously acts out on a regular basis. [N.M] is defiant, has anger issues and fails to stay on task. The mother [Plaintiff] has been made aware and recommended to seek an evaluation and mental health treatment for her child. [Plaintiff] has failed to seek out treatment and an evaluation for [N.M.] for unknown reasons. As a result, [N.M]'s behaviors are continuing and worsening. The situation is ongoing." (Id. ¶¶ 32-35.)

As a result of NYSCCAM's referral of cases to CPS, later that day a CPS social worker, Brenda Giddens, came to Steele regarding N.M. (Id. ¶ 37.) Presti and Billitzki informed Giddens that during the June 2013 meeting, Plaintiff was advised that she must have N.M. evaluated.[1] (Id. ¶ 38.)

Following school that day, N.M. attended Meadow Elementary School for an after-school program. (Id. ¶ 40.) The CPS social worker, Giddens, went to Meadow Elementary School and removed N.M. from her after-school program, taking her into a bathroom and performing a physical examination. (Id. ¶ 41.) Plaintiff was not contacted prior to the examination, nor did she consent to it. (Id. ¶ 42.)

Ultimately, CPS concluded that Defendants' allegations concerning Plaintiff and N.M. were "unfounded." (Id. ¶ 44.)

Plaintiff commenced the within action on July 7, 2015, asserting the following claims: (1) First Amendment retaliation; (2) violation of her First and Fourteenth Amendment rights to intimate association; (3) violation of her Fourteenth Amendment right to due process; (4) intentional infliction of emotional distress; (5) slander; and (6) municipal liability. Defendants

---

[1] Plaintiff avers in her Complaint that she did, in fact, have N.M. evaluated in 2011 and 2013. (Compl. ¶ 39.)

now move to dismiss the entire complaint for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6).

## DISCUSSION

I. Legal Standard

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "Facial plausibility" is achieved when the "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556). As a general rule, the court is required to accept as true all of the allegations contained in the complaint. See Iqbal, 556 U.S. at 678; Kassner v. 2nd Ave. Delicatessen, Inc., 496 F.3d 229, 237 (2d Cir. 2007).

However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements . . . are not entitled to the assumption of truth." Iqbal, 556 U.S. at 678-79 (citation omitted); see also Twombly, 555 U.S. at 555 (stating that the Court is "not bound to accept as true a legal conclusion couched as a factual allegation"). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations," which state a claim for relief. Iqbal, 556 U.S. at 679. A complaint that "tenders 'naked assertion[s]' devoid of 'further factual enhancement'" will not suffice. Iqbal, 556 U.S. at 678 (quoting Twombly, 555 U.S. at 557).

II.  First Amendment Retaliation

In the Second Circuit, the harm or injury required to allege a First Amendment retaliation claim varies depending on the factual context. See Zherka v. Amicone, 634 F.3d 642, 643 (2d Cir. 2011). "'Private citizens alleging retaliation for their criticism of public officials'" are generally required to show that 'they engaged in protected speech, persons acting under color of state law took adverse action against them in retaliation for that speech, and the retaliation resulted in actual chilling of their exercise of their constitutional right to free speech.'" Vaher v. Town of Orangetown, 916 F. Supp. 2d 404, 430 (S.D.N.Y. 2013) (quoting Zherka, 634 F.3d at 643). In other private citizen cases, however, the Second Circuit has dispensed with the "chilling" requirement, where the retaliation is alleged to have caused an injury separate from any chilling effect. See Gill v. Pidlypchak, 389 F.3d 379, 383 (2d Cir. 2004) (holding that "chilling" is only required in cases where a plaintiff states no harm independent of the chilling of speech); see also Dorsett v. County of Nassau, 732 F.3d 157, 160 (2d Cir. 2013) ("Chilled speech is not the sine qua non of a First Amendment claim. A plaintiff has standing if he can show either that his speech has been adversely affected by the . . . retaliation . . . or that he has suffered some other concrete harm.").

Defendants argue that Plaintiff has failed to demonstrate the second and third prongs of a First Amendment retaliation claim - that Defendants took adverse action against her in retaliation for her speech and that Defendants' actions chilled the exercise of Plaintiff's First Amendment right. With respect to the second prong concerning Defendants' motivation, the Second Circuit has explained that "[t]he ultimate question of retaliation involves a defendant's motive and intent, both difficult to plead with specificity in a complaint," and thus "[i]t is sufficient to allege

facts from which a retaliatory intent on the part of the defendants reasonably may be inferred." Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals, 282 F.3d 83, 91 (2d Cir. 2002) (citing Gagliardi v. Village of Pawling, 18 F.3d 188, 195 (2d Cir. 1994)). The Court finds that, at this stage, Plaintiff's Complaint sufficiently alleges facts from which a retaliatory intent on Defendants' part may reasonably be inferred.

With respect to the third prong, Plaintiff is not required to demonstrate the "actual chilling" requirement if she can demonstrate that Defendants' retaliation caused some other form of actual concrete harm. The only harm alleged in Plaintiff's Complaint appears to be reputational. While Defendants argue that this is not enough, at least one case in this circuit has sustained a claim for First Amendment retaliation in response to a motion to dismiss where the plaintiff alleged, among other things, "harm to his professional reputation." Vaher, 916 F. Supp. 2d at 432. Accordingly, the Court finds that, at this stage, Plaintiff has sufficiently stated a claim for First Amendment retaliation. Defendants' motion to dismiss Plaintiff's First Amendment retaliation claim is denied.

III. Right to Intimate Association

The right to intimate association "guarantees an individual the choice of entering into an intimate relationship free from undue intrusion by the state." Sanitation & Recycling Indus. v. City of New York, 107 F.3d 985, 996 (2d Cir. 1997) (citing Roberts v. United States Jaycees, 468 U.S. 609, 617-18 (1984)). The Supreme Court has extended this right to relationships that "attend the creation and sustenance of a family - marriage, childbirth, the raising and education of children and cohabitation with one's relatives." Sanitation & Recycling Indus., 107 F.3d at 996

(quoting Roberts, 468 U.S. at 619).

As the Second Circuit has noted, "[t]he source of the intimate association right has not been authoritatively determined." Adler v. Pataki, 185 F.3d 35, 42 (2d Cir. 1999). "The Supreme Court has recognized a right of association with two distinct components - an individual's right to associate with others in intimate relationships and a right to associate with others for purposes of engaging in activities traditionally protected by the First Amendment, such as speech and other expressive conduct." Id. (citing Roberts, 468 U.S. at 617-18). Accordingly, the right of intimate association appears to "derive[] from both the First and Fourteenth Amendments." Lowery v. Carter, No. 07 Civ. 7684, 2010 U.S. Dist. LEXIS 113933, at *6 (S.D.N.Y. Oct. 21, 2010) (citing Roberts, 468 U.S. at 617-19) (additional citation omitted).

"Where a plaintiff is allegedly retaliated against for the First Amendment activities of a family member and asserts a claim based on intimate association, the courts in this Circuit have considered the claim as deriving from the First Amendment." Agostino v. Simpson, No. 08-CV-5760, 2008 U.S. Dist. LEXIS 93094, at *31 (S.D.N.Y. Nov. 14, 2008) (citing cases); see also Licorish-Davis v. Mitchell, No. 12-CV-601, 2013 U.S. Dist. LEXIS 71917, at *19 (S.D.N.Y. May 20, 2013) (noting that courts have "at times analyzed the right to intimate association as one emanating from the First Amendment"); Garten v. Hochman, No. 08 Civ. 9425, 2010 WL 2465479, at *3 (S.D.N.Y. June 16, 2010) ("Courts in this circuit have acknowledged that a First Amendment right to intimate association is implicated where a plaintiff is allegedly retaliated against for the First Amendment activities of a family member."). "Where the intimate association right at issue is tied to familial relationships and is independent of First Amendment retaliation concerns, however, the Second Circuit has employed an analysis under the framework

of the Fourteenth Amendment right to substantive due process." Garten, 2010 WL 2465479, at *4 (citing cases); see also Patel v. Searles, 305 F.3d 130, 135 (2d Cir. 2002) (stating that the right to intimate association receives protection as "a fundamental element of personal liberty" grounded in substantive due process under the Fourteenth Amendment); Lowery, 2010 U.S. Dist. LEXIS 113933, at *6 ("When the right of intimate association does not implicate any First Amendment speech or retaliation concerns . . . the court must analyze the case exclusively as a Fourteenth Amendment substantive due process claim."). Plaintiff's Complaint asserts an intimate association claim under both the First and Fourteenth Amendments.

    A.    First Amendment

Intimate association cases brought pursuant to the First Amendment typically arise when a plaintiff's family member exercises their right to free speech, resulting in adverse action being taken against the plaintiff. See, e.g., Adler, 185 F.3d at 35 (finding intimate associational protection applied where plaintiff was terminated from his State job in retaliation for a lawsuit commenced by his wife against the State); Sutton v. Village of Valley Stream, 96 F. Supp. 2d 189, 192-93 (E.D.N.Y. 2000) (finding right of intimate association applies where plaintiff father alleged termination of employment in retaliation for son's exercise of right of free speech).

Here, Plaintiff does not allege any retaliation for her daughter's exercise of free speech. Rather, she alleges that her exercise of free speech resulted in retaliation against both she and her daughter in the form of the report to CPS. To the extent that Plaintiff is alleging that Defendants violated N.M.'s right of intimate association, courts have uniformly held that "constitutional rights are personal in nature and cannot be delegated or exercised vicariously." Prestopnik v. Whelan, 253 F. Supp. 2d 369, 373 (N.D.N.Y. 2003) (collecting cases). Moreover, to the extent

that Plaintiff is alleging that her own speech caused the Defendants' retaliation, any such associational claim is duplicative of her First Amendment retaliation claim discussed above and cannot be recast as an intimate association claim.

Accordingly, Plaintiff has failed to state a claim for interference with the right to intimate association pursuant to the First Amendment. Defendants' motion to dismiss is granted, with prejudice, with respect to that claim.

B. Fourteenth Amendment

"[C]ourts within this Circuit specifically addressing the right to intimate association vis-a-vis parent-child relationships have analyzed the right under the principles of substantive due process rather than the First Amendment." Licorish-Davis, 2010 U.S. Dist. LEXIS 71917, at *19 (collecting cases). Substantive due process "provides heightened protection against government interference with certain fundamental rights and liberty interests." Kia P, 235 F.3d at 758 (quoting Washington v. Glucksberg, 521 U.S. 702, 720 (1997)). To state a claim for a violation of substantive due process, a plaintiff must demonstrate that the state action was "so shocking, arbitrary, and egregious that the Due Process Clause would not countenance it even were it accompanied by full procedural protection." Cox v. Warwick Valley Cent. Sch. Dist., 654 F.3d 267, 275 (2d Cir. 2011) (quoting Tenenbaum, 193 F.3d at 600). State action that is "incorrect or ill-advised" is insufficient to give rise to a substantive due process violation; rather, the action must be "conscience-shocking." Cox, 654 F3d at 275 (quoting Kaluczky v. City of White Plains, 57 F.3d 202, 211 (2d Cir. 1995). "Only the most egregious official conduct can be said to be arbitrary in the constitutional sense and therefore unconstitutional." Cox, 654 F.3d at 275 (quoting Tenenbaum, 193 F.3d at 600).

Plaintiff's Complaint fails to raise a substantive due process violation with respect to her intimate association claim. Plaintiff alleges that by filing a report with CPS, Defendants interfered with her right of association with her daughter, "resulting in CPS removing N.M. from those whom [Plaintiff] entrusted and authorized with N.M.'s care and supervision and prevented N.M. from participating in the activities to which [Plaintiff] had expected N.M. would be participating in." (Compl. ¶ 47.) Plaintiff further alleges that Defendants' report to CPS "caused [Plaintiff's] relationship with N.M. to be investigated by the government with the possibility that N.M. would be removed from [Plaintiff's] custody." (Id.)

Plaintiff does not allege, nor can she, that she ever lost custody of N.M. Rather, she alleges that the report to CPS created the possibility that N.M. would be removed from her custody. Such allegations are nothing more than sheer speculation on Plaintiff's part. "Where there is no actual loss of custody, no substantive due process claim can lie." Cox, 654 F.3d at 276 (citing cases). Moreover, even in cases where a parent has been deprived of custody, the Second Circuit has held that "[a]bsent truly extraordinary circumstances, a brief deprivation of custody is insufficient to state a substantive due process . . . claim." Id. (citing cases). This is because such deprivations do "'not result in the parents' wholesale relinquishment of their right to rear their children,' so they are not constitutionally outrageous or conscience-shocking." Id. (quoting Nicholson v. Scoppetta, 344 F.3d 154, 172 (2d Cir. 2003)).

The same can be said here. None of the actions attributed to Defendants can be said to be "arbitrary, shocking or egregious." Nor did any of the actions complained of result in a "wholesale relinquishment" of Plaintiff's rights with respect to her daughter. Based on the foregoing, the Court finds that Plaintiff has failed to state an intimate association claim under the

Fourteenth Amendment and that claim is hereby dismissed with prejudice.

IV. <u>Due Process</u>

Plaintiff's Complaint appears to allege both substantive and procedural due process violations. As the Court found above in connection with Plaintiff's intimate association claim, she has failed to state a claim for a substantive due process violation.

With respect to Plaintiff's procedural due process claim, "district courts in this Circuit have repeatedly dismissed . . . due process claims where there is no allegation that the parents were ever deprived of custody over their children." <u>K.D. v. White Plains Sch. Dist.</u>, 921 F. Supp. 2d 197, 215 (citing cases); <u>see also</u> <u>Daniels v. Murphy</u>, No. 06-CV-5841, 2007 WL 1965303 (E.D.N.Y. July 2, 2007) ("[B]ecause plaintiff has failed to allege any conduct by . . . defendants that threatened plaintiff's interest in the custody of her child, the complaint fails to state a claim under § 1983 for a violation of plaintiff's . . . due process rights."). It is undisputed here that N.M. was never removed from Plaintiff's custody. Accordingly, any claim for a violation of her procedural due process rights fails as a matter of law.

Based on the foregoing, Defendants' motion to dismiss is granted with respect to Plaintiff's due process claim and that claim is hereby dismissed, with prejudice.

V. <u>Municipal Liability</u>

In order to hold a municipality liable under 42 U.S.C. § 1983, a plaintiff "must show that the violation of his constitutional rights resulted from a municipal custom or policy." <u>Ricciuti v. New York City Transit Auth.</u>, 941 F.2d 119, 122 (2d Cir. 1991) (citing cases); <u>see also</u> <u>Monell v.</u>

Dep't of Soc. Servs., 436 U.S. 658, 691 (1978) ("[T]he language of § 1983 . . . compels the conclusion that Congress did not intend municipalities to be held liable unless action pursuant to official municipal policy of some nature caused a constitutional tort."). Respondeat superior may not serve as the basis for imposing municipal liability. See Bd. of the County Comm'rs v. Brown, 520 U.S. 397, 403 (1997) ("We have consistently refused to hold municipalities liable under a theory of respondeat superior."); Ricciuti, 941 F.2d at 122 ("A municipality and its supervisory officials may not be held liable in a § 1983 action for the conduct of a lower-echelon employee on the basis of respondeat superior."); Allen v. City of Yonkers, 803 F. Supp. 679, 683 (S.D.N.Y. 1992) ("Respondeat superior does not apply to the liability of municipal entities . . . ."). The plaintiff in an action brought pursuant to 42 U.S.C. § 1983 bears the burden of establishing municipal liability. See Rubio v. County of Suffolk, No. 01-CV-1806, 2007 U.S. Dist. LEXIS 75344, at *6-7 (E.D.N.Y. Oct. 9, 2007) (citing Vippolis v. Village of Haverstraw, 768 F.2d 40, 44 (2d Cir. 1985)).

In seeking to hold a municipality liable under § 1983, a plaintiff is not required to demonstrate that the municipality had "an explicitly stated rule or regulation." Ricciuti, 941 F.2d at 123 (citing Villante v. Dep't of Corr., 786 F.2d 516, 519 (2d Cir. 1986)). Rather, "a municipal policy may be inferred from the informal acts or omissions of supervisory municipal officials." Zahra v. Town of Southold, 48 F.3d 674, 685 (2d Cir. 1995) (citing Turpin v. Mailet, 619 F.2d 196, 200 (2d Cir. 1980)). For example, such an inference may be drawn where the evidence presented demonstrates that a municipality failed to train its employees such that the failure "amounts to deliberate indifference to the rights of persons with whom the [municipal actor] comes into contact." City of Canton v. Harris, 489 U.S. 378, 388 (1989) However, "[t]he mere

assertion that there exists such a policy or custom, absent specific allegations of fact tending to support such an inference, is insufficient." Batista v. City of New York, No. 05-CV-8444, 2007 U.S. Dist. LEXIS 71905, at *14 (S.D.N.Y. Sept. 24, 2007) (citing Dwares v. City of New York, 985 F.2d 94, 100 (2d Cir. 1993)).

Plaintiff's Complaint contains nothing more than conclusory allegations in connection with her claims for municipal liability. Specifically, Plaintiff alleges, without any factual support, that the District is liable under Monell because its "deliberate indifference led to [Plaintiff's] constitutional deprivation[s]." (Compl. ¶¶ 46, 48, 50.) According to Plaintiff, "such deliberate indifference can be inferred by a lack of training of District personnel in how and when to report incidents to CPS as evidence by Presti and Billitzki's false statements to CPS as well as their report to CPS before conducting a full and proper investigation where no immediate danger existed." (Id.) Such allegations are woefully insufficient to state a claim for municipal liability.

There is nothing offered in the Complaint from which the Court could find that the District, through its failure to train its employees, had a policy, custom or practice in place that caused the constitutional violations alleged by Plaintiff. Moreover, "allegations of a single, isolated, incident of [municipal] misconduct will not suffice" for purposes of demonstrating the existence of a municipal policy. Aguilera v. County of Nassau, 425 F. Supp. 2d 320, 324 (E.D.N.Y. 2006); see also Dwares, 985 F.2d at 100 ("A single incident alleged in a complaint, especially if it involved only actors below the policymaking level, generally will not suffice to raise an inference of the existence of a custom or policy."). Plaintiff offers nothing more beyond her own isolated incident to support a claim of municipal liability.

Finally, where there is no underlying violation of a plaintiff's constitutional rights, any claim for municipal liability necessarily fails as well. See Segal v. City of New York, 459 F.3d 207, 219 (2d Cir. 2006) (observing that there must be an underlying constitutional violation to support a Monell claim); Claudio v. Sawyer, 675 F. Supp. 2d 403, 408 (S.D.N.Y. 2009) ("Under Second Circuit case law, a prerequisite to municipal liability under Monell is an underlying constitutional violation by a state actor."); Donelli v. County of Sullivan, No. 07 Civ. 2157, 2009 U.S. Dist. LEXIS 66994, at *34 (S.D.N.Y. July 31, 2009) (stating that "there can be no municipal liability . . . because . . . the plaintiffs have failed to state a claim for any underlying constitutional violation"). Since Plaintiff has not established an underlying constitutional violation in connection with her intimate association and due process claims, any Monell claim with respect to those alleged constitutional violations fails as well.

Based on the foregoing, Plaintiff's municipal liability claims are all dismissed, with prejudice.

VI.     Intentional Infliction of Emotional Distress

To state a claim for intentional infliction of emotional distress under New York law, a plaintiff must demonstrate "(1) extreme and outrageous conduct; (2) intent to cause, or reckless disregard of a substantial probability of causing, severe emotional distress; (3) a causal connection between the conduct and the injury; and (4) severe emotional distress." Stuto v. Fleishman, 164 F.3d 820, 827 (2d Cir. 1999) (citing Howell v. New York Post Co., 81 N.Y.2d 115, 121 (1993)). For liability to incur, the conduct must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as

atrocious, and utterly intolerable in a civilized society." Stuto, 164 F.3d at 827 (citing Howell, 81 N.Y.2d at 122) (additional citations omitted). "Whether the conduct alleged may reasonably be regarded as so extreme and outrageous as to permit recovery is a matter for the court to determine in the first instance." Stuto, 164 F.3d at 827 (citing Restatement (Second) of Torts, § 46 cmt. h) (additional citation omitted).

Plaintiff's Complaint simply alleges that Defendants' conduct in reporting Plaintiff to CPS "was outside all standards of decency in the community and the conduct was extreme and outrageous and shocks the conscience." (Compl. ¶ 53 .) Such an allegation merely recounts the elements of the tort and is insufficient to state a claim for relief. Moreover, nothing in the facts alleged is so "extreme and outrageous" as to permit recovery. For largely the same reasons that Plaintiff's substantive due process claim fails, Plaintiff's intentional infliction of emotional distress claim also fails.

Accordingly, Defendants' motion to dismiss Plaintiff's intentional infliction of emotional distress claim is granted and the claim is dismissed, with prejudice.


VII. Defamation

"Defamation, consisting of the twin torts of libel and slander, is the invasion of the interest in a reputation and good name." Albert v. Loksen, 239 F.3d 256, 265 (2d Cir. 2001) (citing Hogan v. Herold Co., 446 N.Y.S.2d 836, 839 (4th Dep't 1982), aff'd, 58 N.Y.2d 630 (1982)). In general, "spoken defamatory words are slander; written defamatory words are libel." Albert, 239 F.3d at 265. Here, Plaintiff's defamation claim concerns a report made orally by Defendants to NYSSCAM and CPS and is therefore a claim for slander.

Under New York law, a claim for slander requires a showing "(1) that defendants made a false defamatory statement of fact; (2) that the statement was published to a third party; (3) that the statement concerned the plaintiff; (4) that the defendant was responsible for making the statement; and (5) that the statement was slander per se or caused special damages." Baez v. JetBlue Airways, 745 F. Supp. 2d 214, 225 (E.D.N.Y. 2010). Defamation per se includes statements that, among other things, charge Plaintiff with a "serious crime" or "tend to injure [Plaintiff] in his or her trade, business, or profession." Zherka, 634 F.3d at 645 n.6 (quoting Liberman v. Gelstein, 80 N.Y.2d 429, 435 (1992)). Whether a statement is actionable per se is for the Court to decide. See Albert, 239 F.3d at 271.

While it is unclear whether Plaintiff will ultimately succeed on this claim, construing all of the facts in Plaintiff's favor, as the Court must at this juncture, the Complaint sufficiently states a claim for defamation per se. Defendants' report to CPS, in effect, accused Plaintiff of neglecting her child, which is a crime under New York law. Moreover, Plaintiff is an attorney and prominent in her community through various civic and community organizations. It is plausible that an allegedly false report to CPS by Defendants could "tend to injure [Plaintiff] in . . . her trade, business, or profession." Albert, 239 F.3d at 271. Defendants are, of course, free to renew their arguments for dismissal on a motion for summary judgment following the completion of discovery.

Accordingly, Defendants' motion to dismiss Plaintiff's defamation claim is denied.

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is denied in part and granted in part. Specifically, Plaintiff's claims for interference with the right to intimate association, under both the First and the Fourteenth Amendments, violations of both procedural and substantive due process, municipal liability, and intentional infliction of emotional distress are dismissed, with prejudice. With respect to Plaintiff's claims for First Amendment retaliation and defamation, the motion is denied.

**SO ORDERED:**

Dated: Central Islip, New York
July 26, 2016

s/ Leonard D. Wexler
LEONARD D. WEXLER
United States District Judge