FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★ APR 1 3 2017 ★

LONG ISLAND OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
RHONDA MACO,

                           Plaintiff,

           -against-

BALDWIN UNION FREE SCHOOL DISTRICT,
LORI A. PRESTI, and CARRIE BILITZKI,

                           Defendants.

-----------------------------------------------------------X

MEMORANDUM AND ORDER

CV 15-3958

(Wexler, J.)

APPEARANCES:

    FAMIGHETTI & WEINICK, PLLC
    BY:   MATTHEW WEINICK, ESQ.
    Attorneys for Plaintiff
    155 Pinelawn Road, Suite 220S
    Melville, New York 11747

    SILVERMAN & ASSOCIATES
    BY:   LEWIS R. SILVERMAN, ESQ.
            GERALD S. SMITH, ESQ.
    Attorneys for Defendants
    445 Hamilton Avenue, Suite 1102
    White Plains, New York 10601

WEXLER, District Judge:

    Before the Court is Defendants' motion for summary judgment, pursuant to Rule 56 of the Federal Rules of Civil Procedure. Plaintiff opposes the motion. For the following reasons, Defendants' motion is granted and Plaintiff's claims are dismissed.

BACKGROUND

This is a civil rights action arising out of a report by Defendants to Child Protection Services ("CPS") regarding Plaintiff's care of her minor daughter. In June 2013, Plaintiff's minor child, N.M., was a first-grade student at Steele Elementary School ("Steele"), which is operated by Defendant Baldwin Union Free School District (the "District"). Defendant Lori Presti ("Presti") is the Principal of Steele and Defendant Carrie Bilitzki ("Bilitzki") is Steele's social worker. The relevant facts, which are largely undisputed, are taken from the parties' Local Civil Rule 56.1 Statements, unless otherwise noted.

N.M. began attending Steele Elementary in 2011. While N.M. was in first grade, both Presti and Bilitzki met with Plaintiff several times regarding N.M.'s behavior and emotional well-being. In June 2013, Plaintiff and her husband met with Presti and Bilitzki concerning an event that occurred with respect to N.M. During this meeting, Plaintiff complained about Bilitzki's treatment of her daughter at the School's Field Day on June 5, 2013.[1] (Weinick Decl., Ex. 4; Smith Decl., Ex. E at 39-40.) While Presti disagreed with Plaintiff and her husband's characterization of the events that led to the meeting, all parties considered the meeting cordial.

Ms. Maldonado ("Maldonado") - who is not named herein as a Defendant - was N.M.'s second grade teacher during the 2013-2014 school year. N.M. had behavioral issues that were addressed all throughout her second grade year.

On April 8, 2014, Maldonado emailed Plaintiff twice, advising Plaintiff that N.M. was

---

[1] N.M. had not been allowed to participate in Field Day as a form of punishment. (Weinick Decl., Ex. 4; Smith Decl., Ex. E at 34.) N.M. was the only child barred from participating in Field Day and Plaintiff felt that Bilitzki intentionally humiliated N.M. by forcing her to sit outside and watch the other children participate. (Weinick Decl., Ex. 4; Smith Decl., Ex. E at 33-34.)

feeling sad and depressed and recommending that "we all sit down to help her through this."[2] Maldonado further advised Plaintiff that N.M. was being "defiant" and had falsely accused Maldonado of hurting her.

Based upon the emails Plaintiff received, Plaintiff removed her daughter from school at lunch time on April 8, 2014, representing that N.M. had an appointment to attend.[3] Plaintiff brought N.M. home that day and discussed her behavior with her. In addition, Plaintiff struck N.M. with both her hand and a belt. While Plaintiff does not recall how many times she struck N.M. with her hand, she believes it was more than once. Plaintiff further believes that she struck N.M. with the belt once or twice. This was not the first time Plaintiff physically disciplined her daughter. Plaintiff then returned N.M. to school.

When N.M. returned to school, she informed Maldonado that Plaintiff struck her with a belt in the face during lunch. Upon learning this information, Maldonado contacted the School Nurse. Thereafter, Presti spoke with N.M., who advised Presti that Plaintiff struck her repeatedly with a belt and her hand. Presti also had the School Nurse examine N.M., which revealed no marks or injuries.

Presti then spoke with Bilitizki about what had occurred. Bilitizki informed her that, based upon the information they had, a report should be made to CPS. At approximately 1:51 p.m. on April 8, 2014, a report was made to CPS concerning Plaintiff and N.M. via telephone

---

[2] Maldonado had previously sent Plaintiff emails recommending that N.M. meet with the School Psychologist.

[3] There was not, in fact, any appointment. Rather, Plaintiff took N.M. directly home. (Smith Decl., Ex. E at 24-25.)

call.[4] The issue of suspected physical abuse was raised with CPS at that time, as well as the fact that counseling had been previously recommended for N.M. to address her behavioral issues.[5]

On April 9, 2014, CPS contacted Bilitzki and asked her to check with N.M.'s teacher to see if she was completing homework assignments and projects. CPS also requested that Bilitizki fax copies of progress reports and report cards. Bilitzki advised CPS that N.M. had missed eight homework assignments since January and that her grades had declined in homework and neatness. The report card provided to CPS by Bilitzki also indicated that some of N.M.'s grades had dropped recently and that the issue of incomplete homework assignments had been raised.

Thereafter, a CPS social worker met with and examined N.M. CPS also met with Plaintiff and her husband, as well as Presti. On April 29, 2014, the CPS investigation was closed as "unfounded."

Plaintiff commenced the within action on July 7, 2015, asserting the following claims: (1) First Amendment retaliation; (2) violation of her First and Fourteenth Amendment rights to intimate association; (3) violation of her Fourteenth Amendment right to due process; (4) intentional infliction of emotional distress; (5) slander; and (6) municipal liability. Defendants moved to dismiss Plaintiff's Complaint on February 16, 2016. By Memorandum and Order dated July 26, 2016, the Court denied Defendants' motion to dismiss with respect to Plaintiff's claims for First Amendment retaliation and defamation. In all other respects, the motion was

---

[4] There appears to be a dispute as to who from Defendants actually contacted CPS. However, the evidence submitted indicates that Presti is the individual who made the telephone call.

[5] Although Plaintiff had N.M. evaluated in 2011 and 2013, she never advised Presti, Bilitzki or anyone else affiliated with Steele Elementary of these evaluations.

granted.

Defendants now move for summary judgment with respect to Plaintiff's remaining claims. Plaintiff opposes the motion in its entirety.

## DISCUSSION

I.  Legal Standard

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The burden is on the moving party to establish the lack of any factual issues. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The very language of this standard reveals that an otherwise properly supported motion for summary judgment will not be defeated because of the mere existence of some alleged factual dispute between the parties. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986). Rather, the requirement is that there be no "genuine issue of material fact." Id. at 248.

The inferences to be drawn from the underlying facts are to be viewed in the light most favorable to the non-moving party. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 588 (1986). When the moving party has carried its burden, the party opposing summary judgment must do more than simply show that "there is some metaphysical doubt as to the material facts." Id. at 586. In addition, the party opposing the motion "may not rest upon the mere allegations or denials of his pleadings, but . . . must set forth specific facts showing there is a genuine issue for trial." Anderson, 477 U.S. at 248.

When considering a motion for summary judgment, the district court "must also be

'mindful of the underlying standards and burdens of proof' . . . because the evidentiary burdens that the respective parties will bear at trial guide district courts in their determination of summary judgment motions." SEC v. Meltzer, 440 F. Supp. 2d 179, 187 (E.D.N.Y. 2006) (quoting Brady v. Town of Colchester, 863 F.2d 205, 211 (2d Cir. 1988)) (internal citations omitted). "Where the non-moving party would bear the ultimate burden of proof on an issue at trial, the burden on the moving party is satisfied if he can point to an absence of evidence to support an essential element of the non-movant's claim." Meltzer, 440 F. Supp. 2d at 187.

II. First Amendment Retaliation

In the Second Circuit, the harm or injury required to allege a First Amendment retaliation claim varies depending on the factual context. See Zherka v. Amicone, 634 F.3d 642, 643 (2d Cir. 2011). "'Private citizens alleging retaliation for their criticism of public officials'" are generally required to show that 'they engaged in protected speech, persons acting under color of state law took adverse action against them in retaliation for that speech, and the retaliation resulted in actual chilling of their exercise of their constitutional right to free speech.'" Vaher v. Town of Orangetown, 916 F. Supp. 2d 404, 430 (S.D.N.Y. 2013) (quoting Zherka, 634 F.3d at 643). In other private citizen cases, however, the Second Circuit has dispensed with the "chilling" requirement, where the retaliation is alleged to have caused an injury separate from any chilling effect. See Gill v. Pidlypchak, 389 F.3d 379, 383 (2d Cir. 2004) (holding that "chilling" is only required in cases where a plaintiff states no harm independent of the chilling of speech); see also Dorsett v. County of Nassau, 732 F.3d 157, 160 (2d Cir. 2013) ("Chilled speech is not the sine qua non of a First Amendment claim. A plaintiff has standing if he can show

either that his speech has been adversely affected by the . . . retaliation . . . or that he has suffered some other concrete harm."). Defendants argue that Plaintiff has failed to demonstrate the second and third prongs of a First Amendment retaliation claim - that Defendants took adverse action against her in retaliation for her speech and that Defendants' actions chilled the exercise of Plaintiff's First Amendment right or caused her some other concrete harm.

With respect to the second element of a First Amendment retaliation claim, "[e]vidence of improper motive 'may include expressions by the officials regarding their state of mind, circumstances suggesting in a substantial fashion that the plaintiff has been singled out, or the highly unusual nature of the actions taken.'" Anderson v. City of N.Y., 817 F. Supp. 2d 77, 96 (E.D.N.Y. 2011) (quoting Blue v. Koren, 72 F.3d 1075, 1084 (2d Cir. 1995)). Plaintiff has failed to offer any evidence to sustain this element.

Under New York's Social Services Law, Presti and Bilitzki are considered "mandatory reporters," which means they are required to notify CPS of suspected child abuse. See N.Y. Soc. Serv. Law § 413(1)(a); see also Oglesby v. Eikszta, 499 Fed. App'x 57, 60 (2d Cir. 2012). "In that role, 'school officials receive immunity from liability whenever they report suspected abuse in good faith, but they are exposed to liability if they willfully fail to do so.'" Dole v. Huntington Union Free Sch. Dist., No. 14-CV-1283, 2016 U.S. Dist. LEXIS 121498, at *14 (E.D.N.Y. Sept. 8, 2016) (quoting Oglesby, 499 Fed. App'x at 60). "Given this difficult statutory role imposed upon teachers and school administrators, the Court must give 'unusual deference' to their 'decision to report reasonably suspected abuse and neglect.'" Dole, 2016 U.S. Dist. LEXIS 121498, at *14 (quoting Oglesby, 499 Fed. App'x at 60).

Based on the evidence submitted, the Court finds that Defendants had reasonable cause to

suspect that N.M. may have been physically abused. Moreover, there is no evidence to support Plaintiff's claim that Defendants called CPS to retaliate against her for voicing complaints about N.M.'s treatment on Field Day in June 2013. Plaintiff bases her claim on nothing more than sheer speculation, which is insufficient to establish a First Amendment retaliation claim.

In addition, the meeting in which Plaintiff complained about Bilitzki's treatment of N.M. on Field Day occurred in June 2013. Defendants did not contact CPS until April 2014, almost one year later. "[C]ourt in this Circuit have consistently held that a passage of more than two months between the protected activity and the adverse . . . action does not allow for an inference of causation." Frisenda v. Inc. Vill. of Malverne, 775 F. Supp. 2d 486, 512 (E.D.N.Y. 2011) (collecting cases). Here, the protected activity - Plaintiff's complaint about Bilitzki - is simply too attenuated from the CPS complaint to support Plaintiff's claim that Defendants contacted CPS in an effort to retaliate against her.

Finally, Plaintiff has failed to establish that she suffered any concrete harm as a result of Defendants' contacting CPS. While Plaintiff alleges that her reputation and her standing in the community have been damaged as a result of Defendants' complaint to CPS, she has failed to adduce any evidence to support this claim. Rather, it is undisputed that Plaintiff's legal business has not suffered in any way as a result of the CPS investigation. Nor can she identify any business opportunities that she has lost. Moreover, Plaintiff has not been denied the opportunity to volunteer at any organizations since the CPS investigation. Nor has the school district prohibited her from participating in the PTA or any class activities. Accordingly, Plaintiff has failed to establish that her speech has been chilled in any way or that she has suffered some other concrete harm as a result of Defendants' actions.

Based on the foregoing, the Court finds that there are no issues of material fact with respect to Plaintiff's First Amendment retaliation claim that would warrant a jury trial. Defendants are accordingly granted judgment as a matter of law with respect to Plaintiff's First Amendment retaliation claim and the claim is dismissed with prejudice.[6]

III. Plaintiff's State Law Defamation Claim

Having found that Plaintiff's First Amendment retaliation fails as a matter of law, there is no longer any independent basis for federal jurisdiction in the within action. Although the Court has the discretion to exercise supplemental jurisdiction over plaintiff's remaining state law claim, see 28 U.S.C. § 1367(a), it declines to do so. See 28 U.S.C. § 1367(c)(3) ("The district courts may decline to exercise supplemental jurisdiction over a claim . . . if . . . the district court has dismissed all claims over which it has original jurisdiction . . . ."); Marcus v. AT&T Corp., 138 F.3d 46, 57 (2d Cir. 1998) ("In general, where the federal claims are dismissed before trial, the state claims should be dismissed as well.").

Accordingly, Plaintiff's defamation claim is dismissed without prejudice.

---

[6] Since the Court is granting summary judgment on the merits of Plaintiff's First Amendment retaliation claim, it need not consider Defendants' arguments concerning qualified immunity.

## CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment is granted and Plaintiff's First Amendment retaliation claim is dismissed with prejudice. In addition, Plaintiff's state law defamation claim is dismissed without prejudice, pursuant to 28 U.S.C. § 1367(c)(3). The Clerk of the Court is directed to enter judgment accordingly and to mark this action as closed.

**SO ORDERED:**

Dated: Central Islip, New York
April 13, 2017

/s/ LEONARD D. WEXLER

LEONARD D. WEXLER

United States District Judge